**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY**

JUSTICE HOLDINGS, LLC,

    Plaintiff,

v.                                                CIVIL ACTION NO. 5:20-cv-00687

COOPER LAND DEVELOPMENT, INC.,

    Defendant.

### MEMORANDUM OPINION AND ORDER

Pending are Defendant Cooper Land Development, Inc.'s ("CLD") Motion to Dismiss [Doc. 8], filed March 1, 2021, and Motion to Change Venue [Doc. 20], filed April 30, 2021. Plaintiff Justice Holdings, LLC ("Justice Holdings") responded in opposition to both Motions, to which CLD replied.[1]

### I.

In May 2001, Glade Springs Village ("GSV") was created when CLD, a developer, and the Glade Springs Village Property Owners Association ("GSVPOA") entered into a written Declaration of Covenants and Restrictions ("Declaration"). The Declaration sets forth certain construction, maintenance, administrative rights, duties, and obligations between CLD and the GSVPOA. Pursuant to the Declaration, the GSVPOA is responsible for providing "utility systems"

---

[1] CLD has also since filed a motion to supplement its Motion to Dismiss and a motion for a hearing regarding its Motion to Dismiss and its Motion to Change Venue. The Court **DENIES** as moot the motion to supplement [Doc. 28]. Further, inasmuch as the facts and legal arguments considered by the Court obviate the need for oral argument, the Court **DENIES** the motion for a hearing [Doc. 53].

to the GSV community, including the obligation to bear the costs of their construction, installation, and maintenance from homeowner assessments. The Declaration also gives CLD development rights and obligations for it to design, plan, record, market, and sell lots within GSV. It also exempts "Developer Lots" from the obligation to pay annual assessments until such lots are sold to a third party. The Declaration was filed with the Clerk of Raleigh County and has remained a matter of public record since May 30, 2001.

On July 1, 2001, CLD and GSVPOA entered into a Loan Agreement and Revolving Promissory Note (the "Utility Loan"), under which CLD agreed to loan the GSVPOA $8,000,000 to fund the construction and installation of water, sewer, and electric utilities for GSV. The Utility Loan initially bore no interest, and the total principal advanced under the loan agreement was due and payable on July 1, 2009. CLD and GSVPOA subsequently executed various amendments to the Utility Loan, increasing the maximum amount of the loan to $15,000,000 and extending the payment date.

On July 20, 2010, James C. Justice Companies, Inc., agreed to purchase CLD's interests in GSV, effective October 20, 2010. The Purchase Agreement between James C. Justice Companies, Inc., and CLD was subsequently assigned to Justice Holdings prior to closing. As part of the transaction, CLD and Justice Holdings entered into an Assignment and Assumption of Utility Loan Agreement ("Utility Loan Assignment"), under which CLD assigned and transferred its rights and obligations in and to the Utility Loan between it and the GSVPOA to Justice Holdings. On October 20, 2010, CLD and Justice Holdings also entered into a Closing Agreement consummating the transactions completed by the Purchase Agreement. Justice Holdings has thus owned and been the developer of GSV since that date.

After the transfer, Justice Holdings advanced additional funds -- in excess of $2.1 million -- under the Utility Loan for the construction, installation, and maintenance of certain utility improvements, which were the obligation and responsibility of the GSVPOA under the Declaration and loan. Justice Holdings and the GSVPOA amended the loan agreement multiple times, adding an immediate monthly interest obligation and ultimately extending the maturity date on the $15,000,000 Utility Loan to June 30, 2019. GSVPOA defaulted on the Utility Loan by failing to timely pay the balance. Justice Holdings then instituted an action against the GSVPOA in the Circuit Court of Raleigh County on November 6, 2019, seeking enforcement of GSVPOA's obligations under the Utility Loan; GSVPOA answered with affirmative defenses and counterclaims.

On October 5 and 6, 2020, the Circuit Court of Raleigh County entered orders affecting the rights and obligations between Justice Holdings and the GSVPOA. Specifically, the Circuit Court concluded, *inter alia*, over Justice Holdings' objections, that (1) GSV is not a limited expense liability planned community, but a common interest community subject to the West Virginia Uniform Common Interest Ownership Act; (2) the GSVPOA had the right to retroactively sever the provisions from the Declaration exempting Developer Lots from annual assessment payment obligations; (3) the GSVPOA had the right to terminate the Utility Loan, effective February 16, 2020; and (4) Justice Holdings cannot recover under the Utility Loan from the GSVPOA.[2] As a result of these orders, the GSVPOA now seeks to recover the unpaid Developer Lot assessments from Justice Holdings for at least the last ten years.

On October 16, 2020, following the Circuit Court's rulings, Justice Holdings instituted this action against CLD. Justice Holdings alleges that during the transaction for the sale

---

[2] As of the date of the instant Complaint, the balance of the Utility Loan exceeds $12.4 million, exclusive of interest.

of GSV in 2010, CLD represented to Justice Holdings that (1) the Utility Loan was existing, valid, and enforceable; (2) the balance owed under the Utility Loan by the GSVPOA to CLD immediately before closing and assignment to Justice Holdings was approximately $10.3 million; and (3) CLD did not owe and had not paid any annual assessments on Developer Lots and none would be owed under the Declaration by Justice Holdings. Justice Holdings further alleges that the absence of any obligation for it to pay annual assessments on the Developer Lots was a substantial factor in its decision to purchase the same and enter the transaction with CLD.

Justice Holdings alleges that it would not have purchased the Developer Lots, nor agreed to own them, absent the recorded Declaration provision exempting the lots from the annual assessment payment obligation to the GSVPOA or had Justice Holdings known or had reason to believe that CLD's non-payment of these amounts was illegal. The Complaint asserts the following seven claims against CLD: Count I – Breach of Contract; Count II – Recission for Failure of Consideration; Count III – Negligent Breach of Duty to Disclose and Duty of Good Faith and Fair Dealing; Count IV – Violations of Article Three of the Uniform Commercial Code; Count V – Intentional Misrepresentation or Fraudulent Concealment; Count VI – Mutual Mistake of Fact and Law (In the Alternative); and Count VII – Unjust Enrichment/Restitution/Quasi-Contract.[3]

On March 1, 2021, CLD moved to dismiss the Complaint in its entirety pursuant to *Federal Rules of Civil Procedure* 12(b)(1)[4] and 12(b)(6). On April 30, 2021, CLD alternatively moved to transfer venue to the United States District Court for the Western District of Arkansas, Fayetteville Division. CLD contends transfer is warranted pursuant to the forum selection clause

---

[3] The Complaint inadvertently labels Count VI as Count V and Count VII as Count VI.

[4] The Court notes that CLD's challenge to subject matter jurisdiction is based on ripeness grounds. It is undisputed that the Court has diversity jurisdiction over the claims asserted in the Complaint, inasmuch as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. *See* 28 U.S.C. § 1332.

contained in the parties' Termination Agreement, dated August 31, 2015. Justice Holdings responds transfer should be denied inasmuch as CLD waived its venue objection by failing to raise the same in its previous Motion to Dismiss. The Court will first address the transfer motion.

## II.

### A.  *Governing Standard*

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might haven been brought or to any district or division to which all parties have consented." "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013).

Our Court of Appeals has identified four factors to be considered in this regard: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). "As a general rule, a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." *Id.* (internal quotations omitted). The interest of justice factor is broad and "encompasses public interest factors aimed at systematic integrity and fairness." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (internal quotations omitted). "It is well settled that the decision whether to transfer a matter to another district is committed to

the sound discretion of the district court." *Vass v. Volvo Trucks N. Am., Inc.*, 304 F. Supp. 2d 851, 857 (S.D. W. Va. 2004).

The analysis differs, however, when the parties have entered a contract "containing a valid forum selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Const. Co.*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). A forum selection clause is presumed valid and enforceable when it is mandatory in nature. *See BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 469 (4th Cir. 2018). A forum selection clause is mandatory if "it contains 'specific language of exclusion.'" *Id.* at 472 (internal citations omitted). A resisting party may overcome the presumption of enforceability by demonstrating the forum selection clause is unreasonable under the circumstances. *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 651 (4th Cir. 2010) (citing *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)). "When the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified," absent "extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine Const. Co.*, 571 U.S. at 62. "The presence of a valid forum-selection clause [thus] requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* at 63.

First, the plaintiff's choice of venue bears no weight. *Atl. Marine Const. Co.*, 571 U.S. at 63. Instead, "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, the district court "should not consider arguments about the parties' private interests." *Id.* at 64. And "[t]hird, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor

6

that in some circumstances may affect public-interest considerations." *Id.* Simply put, only the public interest factors may weigh against transfer. *Id.* Such factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id*. at 64 n.6. But, given that "those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64.

**B.     Analysis**

The forum selection clause contained in the parties' Termination Agreement provides as follows:

> (b)     <u>Exclusive Jurisdiction</u>. JUSTICE [HOLDINGS] AND CLD AGREE THAT ALL DISPUTES AMONG THEM ARISING OUT OF, CONNECTED WITH, RELATED TO OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM IN CONNECTION WITH THIS AGREEMENT AND OTHER AGREEMENTS BETWEEN THEM AND WHETHER ARISING IN CONTRACT, TORT, EQUITY OR OTHERWISE, SHALL BE RESOLVED ONLY BY STATE OR FEDERAL COURTS LOCATED IN ARKANSAS, AND EACH WAIVES ANY OBJECTION BASED ON VENUE OR FORUM NON CONVENIENS WITH RESPECT TO ANY ACTION INSTITUTED THEREIN, BUT EACH ACKNOWLEDGES THAT ANY APPEALS FROM THOSE COURTS MAY HAVE TO BE HEARD BY A FEDERAL COURT LOCATED OUTSIDE OF ARKANSAS. JUSTICE WAIVES IN ALL DISPUTES ANY OBJECTION THAT IT MAY HAVE TO THE LOCATION OF THE COURT CONSIDERING THE DISPUTE.

[Doc. 8-7 at 4]. As a threshold matter, the Court concludes the forum selection clause is mandatory and thus presumptively enforceable. Indeed, the clause includes "specific language of exclusion" demonstrating all disputes among the parties "shall" and "only" be resolved by federal courts in Arkansas. *See Unistaff, Inc. v. Koosharem Corp.*, 667 F. Supp. 2d 616, 619 (E.D. Va. 2009) (noting "words such as 'shall,' 'only' or 'exclusive' are often indicators that a clause is mandatory").

Moreover, Justice Holdings does not dispute the forum selection clause's enforceability, nor does it quarrel with CLD's assertion that the alleged claims "clearly arise out of, are connected with, related to, and incidental to the agreements between Justice and CLD for the purchase and sale of GSV." [Doc. 21 at 2]. Instead, Justice Holdings' sole contention is that CLD waived the improper venue defense under Rules 12(h)(1) and (g)(2) by omitting it from its previous Motion to Dismiss.

Justice Holdings is correct that Rules 12(h)(1) and (g)(2) operate in tandem, providing that a party may waive an improper venue defense by failing to raise it in a prior Rule 12 motion. But CLD does not move for dismissal pursuant to Rule 12(b)(3) based on improper venue; it instead requests transfer pursuant to 28 U.S.C. § 1404(a); and section "1404(a) does not condition transfer on the initial forum's being 'wrong'" but "permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation." *Atl. Marine Const. Co.*, 571 U.S. at 59. Section 1404(a) is thus the proper mechanism to enforce a forum selection clause here. Inasmuch as CLD does not move for dismissal pursuant to Rule 12(b)(3), waiver of the improper venue defense is inapplicable.[5]

Given that the parties have agreed to a valid forum selection clause, the Court confines its analysis to the public interest factors. *Atl. Marine Const. Co.*, 571 U.S. at 62. Justice Holdings, however, has failed to direct the Court to any exceptional public policy factor that counterbalances, much less outweighs, the forum selection clause. "In all but the most unusual cases . . . 'the interest of justice' is served by holding the parties to their bargain." *Id.* at 66. Accordingly, the Court concludes this matter is not so unusual that the parties' forum selection clause should not control; thus, a transfer of venue is proper.

---

[5] The Court notes that even assuming Justice Holdings' waiver assertion were applicable, it would still be without merit inasmuch as (1) CLD reserved its defenses, including those under Rule 12, in footnote one of its Motion to Dismiss, and (2) the instant motion was filed shortly after the briefing on the Motion to Dismiss concluded.

The Court **GRANTS** the Motion to Change Venue, and, inasmuch as transfer is warranted, the Court **DENIES** without prejudice the Motion to Dismiss.

### III.

Based upon the foregoing discussion, the Court **GRANTS** CLD's Motion to Change Venue [**Doc. 20**], **TRANSFERS** this action to the United States District Court for the Western District of Arkansas, Fayetteville Division, and **DENIES** without prejudice CLD's Motion to Dismiss [**Doc. 8**].

The Clerk is directed to send a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTER: November 9, 2020

Frank W. Volk
United States District Judge